**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-3924 & 16-3943
_____

DERRICK ASKEW, for himself and as representative of similarly situated employees
Appellant in 16-3924
v.

R.L. REPPERT INC., RICHARD L. REPPERT, R.L. REPPERT, INC.
EMPLOYEES PROFIT SHARING 401(k) PLAN, R.L. REPPERT, INC.
MONEY PURCHASE PLAN (DAVIS BACON PLAN); R.L. REPPERT, INC.
MEDICAL PLAN; R.L. REPPERT, INC. HRA MEDICAL EXPENSE
REIMBURSEMENT PLAN
v.

CALIFORNIA PENSION ADMINSITRATORS & CONSULTANTS INC.;
KISTLER TIFFANY BENEFITS CORP.

R.L. REPPERT, INC; RICHARD REPPERT; R.L. PEPPERT, INC. EMPLOYEES
PROFIT SHARING 401(K) PLAN; R.L. PEPPERT, INC MONEY PURCHASE PLAN,
(DAVIS BACON PLAN); R.L. REPPERT, INC. MEDICAL     PLAN; R.L. REPPERT,
INC. HRA MEDICAL EXPENSE REIMBURSEMEMNT PLAN,
Appellants in 16-3943
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. Action No. 5-11-cv-04003)
District Judge:  Hon. James Knoll Gardner
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 6, 2017
_____

Before:  CHAGARES, GREENAWAY JR., and VANASKIE, *Circuit Judges*

(Opinion Filed: December 21, 2017)

_____

OPINION[*]
_____

VANASKIE, *Circuit Judge.*

This appeal by Derrick Askew, a former employee of Appellee/Cross-Appellant R.L. Reppert Inc. ("Reppert"),[1] arises over the alleged failure of Reppert to properly contribute to its employees' Pension Plan and its alleged subsequent failure to produce requested Pension Plan documents when the error was discovered. The District Court, following an extensive review of the record, assessed the culpability of Reppert, and imposed fines for the lengthy delay in producing requested documents. The District Court also directed that the Pension Plan at the center of this controversy be audited. Finally, the District Court dismissed third-party claims asserted by Reppert against Appellee California Pension Administrators & Consultants, Inc. ("CalPac"), the entity with which Reppert had contracted to administer its Pension Plan. Both Reppert and Askew are dissatisfied with the decisions of the District Court, one believing it went too far and the other that it did not go far enough. Having carefully considered the parties' arguments in the context of the comprehensive record, we will affirm all aspects of the District Court's rulings.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Reppert is joined as Appellee/Cross Appellant by its principal owner, Richard L. Reppert, and various employee benefit plans established by Reppert. As the distinction among the Appellees/Cross Appellants is not material to our resolution of the issues on appeal, we will simply refer to Reppert as the Appellee/Cross Appellant.

2

## I.

Reppert is a construction company. It performs work that falls under the Davis-Bacon Act, 40 U.S.C. § 3142, as well as prevailing wage laws enacted in New Jersey and Pennsylvania.[2] Reppert originally adopted the "R.L. Reppert, Inc. Money Purchase Plan (Davis-Bacon Plan)" ("Davis-Bacon Plan") sometime before January 1, 1999. Any money comprising the "prevailing wage" that was not paid as cash wages, health, welfare or any other benefit, would be contributed to the Davis-Bacon Plan for the benefit of each employee and would be 100% vested at all times. Reppert later adopted the "R.L. Reppert, Inc. Employee Profit Sharing 401(k) Plan" ("401(k) Plan"). According to Reppert, the 401(k) Plan was eventually amended to include contributions based upon prevailing wage payments, thereby subsuming the Davis-Bacon Plan.[3]

---

[2] The Davis-Bacon Act and related state legislative enactments apply to contractors and subcontractors performing work on federally funded or assisted contracts in excess of $2,000 for the construction, alteration, or repair of public buildings or public works. Davis-Bacon Act contractors and subcontractors must pay their laborers and mechanics no less than the locally prevailing wages and fringe benefits for corresponding work on similar projects in the area. UNITED STATES DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION (WH) DAVIS BACON AND RELATED ACTS, https://www.dol.gov/whd/govcontracts/dbra.htm (last visited Nov. 8, 2017).

[3] The District Court ultimately determined that the Davis-Bacon Plan was no longer in existence when Askew worked for Reppert. Accordingly, as the District Court correctly determined, Askew lacked "statutory standing under 29 U.S.C. § 1132(a)(1) to request documents and bring suit with respect to the Davis Bacon Plan." (App. at A52.) Askew does not directly challenge this ruling on appeal, but nonetheless persists in seeking copies of documents relating to the Davis-Bacon Plan. Because there is no evidence that Askew was ever a participant or beneficiary of the Davis-Bacon Plan, we discern no error in the District Court's conclusion that Askew lacked standing to seek documents relating to that Plan.

3

Derrick Askew was employed by Reppert from July 29, 2007, through August 31, 2008. As an employee of Reppert, Askew was given a Summary Plan Description of both the 401(k) and Davis-Bacon Plans.

In 2008, after the cessation of his employment with Reppert, Askew noted an underpayment of vacation pay owed to him. Counsel for Askew eventually sent a letter to Reppert on November 5, 2008, seeking documents relating to all assets held in the Davis-Bacon and 401(k) Plans pursuant to 29 U.S.C. § 1024(b)(4). The request focused on trust agreements, custodial agreements, or other documents governing the assets of the Plans; financial statements of the Plans and the opinions of any certified public accountant relating thereto; and any contract governing the administration of the Plan or the investment or custody of Plan assets. When Reppert failed to produce the requested documents, Askew filed suit. In April of 2009, Reppert finally produced a number of documents, and Askew's first suit was dismissed without prejudice.

Counsel for Askew reviewed the documents provided and noted deficiencies in the documentation for the Plans. On June 17, 2011, Askew commenced this putative class action. Counts One and Two of the complaint claimed that Reppert failed to create and provide documents as required by ERISA; Count Three alleged that Reppert failed to establish a trust as required by 29 U.S.C. § 1103; Count Four asserted that Reppert breached fiduciary duties to the Plans by failing to administer them in accordance with ERISA and failing to collect amounts owing to the Plans on a timely basis; Count Five averred that Reppert failed to deposit certain withheld wages; and Count Six sought a

4

declaratory judgment regarding the benefits due to Askew. Reppert subsequently filed a third-party complaint against the administrator of the 401(k) Plan, CalPac.

In response to a request by the Magistrate Judge who was initially assigned to the case, Askew provided a detailed list of missing documents on April 16, 2012. Askew renewed his request for these documents in discovery on August 24, 2012, but he received no additional documents from Reppert. While Askew was able to find some of the missing documents on his own through a subpoena to Nationwide Insurance Company, who produced a trust agreement between Reppert and Nationwide, this did not end the dispute because information regarding Plan assets prior to 2010 was still missing. Eventually, Askew discovered some pre-2010 agreements by subpoenaing Stifel Trust Co. and its successor, Gruntal and Co. Compounding Askew's difficulties was the absence of any audits of the Pension Plans.

In a 2015 deposition, Reppert stated that it could produce no other documents with respect to the Davis-Bacon and 401(k) Plans and it also claimed that it was exempt from the requirement for annual audits because it employed less than the requisite number of employees during the years 2008 through 2011. Reppert further asserted that any miscalculation of employees resulting in the absence of an audit in violation of federal law was the fault of third-party plan administrator, CalPac.

In April of 2015, after prolonged discovery, Askew filed a Motion for Partial Summary Judgment and Dismissal, seeking an independent audit of the Reppert Pension Plans and assessment of penalties for the non-production of documents. In July 2015,

third-party Plan Administrator CalPac and Reppert Inc. filed separate cross-motions for summary judgment.

In February of 2016, the District Court granted in part Askew's Motion for Partial Summary Judgment and Dismissal, finding liability for Reppert's failure to provide Askew with the documents relating to the 401(k) Plan assets in a timely manner and for Reppert's failure to produce the Nationwide agreement. The District Court denied Askew's motion in all other respects. Regarding the need for an audit for Plan years 2008-2011, the District Court found that there was a genuine issue of material fact as to whether defendants were required by ERISA to conduct audits and failed to do so. Whether CalPac was responsible for the oversight regarding the audits was also an issue left for trial. The District Court granted Reppert's Motion for Summary Judgment in its entirety, except as to the failure to produce the documents relating to assets in the 401(k) Plan and the subpoenaed Nationwide agreement. Subsequent motions for reconsideration and class certification filed by Askew were denied.

The District Court then held a bench trial regarding (a) the level of penalties to be assessed for the failure to provide 401(k) Plan documents on a timely basis; (b) Reppert's failure to conduct annual audits for Plan years 2008 through 2011; and (c) Reppert's claim that CalPac breached its contract with Reppert in failing to alert the company to the need to conduct an audit of the 401(k) Plan for Plan years 2008-2011. In September of 2016, the District Court issued a trial verdict that assessed penalties of $50 per day for the period of December 6, 2008 to October 2, 2009, for nonproduction of documents relating to Reppert's 401(k) Plan documents, and $1 per day for the period of May 17, 2012 to

6

January 1, 2015, for the nonproduction of the Nationwide agreement that Askew had obtained through subpoena, totaling $15,959.00. The Court also found that Reppert failed to conduct audits of the 401(k) Plan for Plan years 2008 through 2011 in violation of ERISA, and ordered that Reppert Inc. "engage an independent qualified public accountant to conduct an examination of the financial statements,… books and records, of the 40l(k) Plan, consistent with the requirements of 29 U.S.C. § 1023(a)(3)(A) for the Plan years 2008 through 2011 and to amend the annual reports…if necessary." (App. at A201.) The Court also held that Reppert had failed to show by a preponderance of the evidence that CalPac had breached its contract with Reppert to provide plan administration and recordkeeping services for the 401(k) Plan.

Askew timely filed his Notice of Appeal as to the final judgment and related interlocutory orders on October 21, 2016. Reppert filed its Notice of Cross-Appeal as to the final judgment on October 25, 2016.

**II.**

The District Court had subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C § 1331.[4] We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

[4] Reppert contests jurisdiction, asserting that Askew is "nothing but a stalking horse for the Carpenters Union to use this case as a vehicle to further the Union's interests, not to redress any injury encompassed by ERISA." (Appellees' Br. at 25.) Reppert contends that Askew lacks the requisite injury-in-fact for standing to bring the claims in this litigation. There is, however, no disputing the fact that Askew was a participant in Reppert's ERISA-covered 401(k) Plan, and as such has the right to bring an action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Askew's action falls squarely within this legislative grant of authority to

7

Askew appeals the District Court's dismissal of "claims for document penalties beyond the 401(k) Plan documents and Nationwide agreement, the amount of the penalty assessed, [and] the failure to require an independent audit with an accountant not selected by Reppert. . . ." (Appellant's Br. at 18.) Askew also challenges the District Court's dismissal of claims to recover alleged losses purportedly sustained by the Reppert Pension Plans.

Reppert appeals the District Court's decision to impose fines for the withholding of documents and the District Court's determination that an independent audit was required. Reppert also challenges the District Court's decision that CalPac bore no liability with respect to the finding that annual audits for Plan Years 2008 through 2011 were required.

The District Court ruled on summary judgment that Reppert had no ERISA-based responsibility to produce documents other than the 401(k) Plan documents and the Nationwide agreement, and that Askew had failed to show the existence of any recoverable losses to the Reppert plans. We exercise plenary review over the District Court's summary judgment decisions. *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 207 (3d Cir. 2005).

The District Court assessed fines, ordered an independent audit, and dismissed Reppert's third-party claim against CalPac on the basis of findings of fact and

---

bring suit. *See Horvath v. Keystone Health Plan East, Inc.,* 333 F.3d 450, 456 (3d Cir. 2003) (plan participant need not show actual harm to sue to compel compliance with ERISA disclosure requirements). Accordingly, Reppert's jurisdictional challenge fails, even though there may be a larger agenda at stake on the part of the Carpenter's Union.

8

conclusions of law following a non-jury trial. We review the District Court's findings of fact for clear error; its conclusions of law are accorded plenary review. *See McGann v. Cinemark USA, Inc.,* 873 F.3d 218, 223 (3d Cir. 2017). We review the District Court's assessment of penalties pursuant to ERISA § 502(c)(1) for abuse of discretion. *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 77 (3d Cir. 2001).

**III.**

We will first address the summary judgment rulings on the questions of whether Reppert failed to produce documents required by ERISA and whether Askew showed any recoverable losses to the Reppert 401(k) Plan. We will then consider the post-trial findings concerning the amount of the fines assessed, the need for an independent audit, and the ability of Reppert to choose the auditor. Finally, we will turn to the entry of judgment in favor of CalPac on Reppert's third-party claim.

**A.**

A plan administrator is required to disclose certain documents and records within 30 days of a written request by any plan participant or beneficiary. More specifically, a plan administrator:

> shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4).

9

On summary judgment, the late Judge James Knoll Gardner, who did yeoman's work in wading through the extensive record of this bitterly fought case, found that Reppert "failed to produce any required documents pertaining to the 401(k) Plan within thirty days of plaintiff's written request and . . . failed to produce a custodial agreement with Nationwide Trust Company, FSB." (App. at A34.) He also found:

> (1) defendant Reppert, Inc. was not obligated to produce any documents regarding the Davis Bacon Plan; (2) defendant Reppert, Inc. fulfilled any document production obligations it had with respect to trust agreements, periodic benefits statements, notice of vested deferred benefits, disclosure of financial reports, Section 404(c) disclosures, notice of qualified default investment, notice of availability of investment advice, and depository documents for the 401(k) Plan; (3) plaintiff has not provided sufficient evidence to demonstrate entitlement to any custodial agreements other than the Nationwide Trust Company agreement. . . .

(*Id.* at A34-35.) These conclusions are supported by a painstaking examination of the record and the parties' contentions. We discern no error in the District Court's conclusion that Reppert ultimately satisfied its disclosure obligations under ERISA.

We also find no error in the District Court's conclusion that Askew had failed to produce any evidence of a recoverable loss sustained by the 401(k) Plan as a result of any wrongdoing. On appeal, Askew argues that the District Court acted prematurely in dismissing claims for recovery of any Pension Plan losses that may be uncovered by an audit. As Reppert asserts, however, Askew is not foreclosed from presenting any cognizable claim that the audit may disclose. Thus, we will affirm the District Court's dismissal of Counts III through VI of the complaint.

**B.**

10

Both Askew and Reppert challenged the District Court's assessment of fines for the delay in producing required documents. Section 502(c)(1) of ERISA provides:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal. . . .

29 U.S.C. § 1132(c)(1).[5]

The parties do not dispute that Askew made a written request for ERISA-covered documents on November 5, 2008, and that Reppert informed Askew by letter dated December 5, 2008, i.e., 30 days after the document demand, that Askew could have the documents in its possession by tendering payment of $1800. What happened after Askew understandably requested an itemization of the $1800 charge is not clear. What is clear, however, is that Reppert ultimately produced the documents, other than the Nationwide agreement, on October 2, 2009, without imposing any charge. The District Court attributed the delay in production solely to Reppert as its $1800 charge was not substantiated. We discern no error in this regard. The District Court noted that Reppert admitted that the vast majority of the charge was for "labor costs," (App. at A80), and far exceeded the 25 cents per page maximum allowable by Department of Labor regulations. *See* 29 C.F.R. § 2520.104b-30. Accordingly, the District Court did not err in finding

---

[5] The daily maximum penalty was increased by regulation to $110. *See* 29 C.F.R. § 2575.502c-1.

11

Reppert responsible for the delay in producing documents it had in its possession from December 6, 2008 until it finally produced them on October 2, 2009.

The Nationwide agreement stands on a little different footing. It was not specifically requested by Askew until April 16, 2012, and was not received until January of 2015. Although the District Court found that this document was producible, it also found that whether it was subject to production was a "close question," (App. at A175), and that Reppert had acted in good faith in believing that its production was not required.

The District Court assessed each period of document production delay separately. After identifying the factors constraining the discretion in setting the amount of the penalty—"bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary," *Romero v. SmithKline Beecham*, 309 F.3d 113, 120 (3d Cir. 2002)—the District Court determined that a fine of $50 per day was appropriate for the initial delay of 300 days from December 6, 2008 to October 2, 2009. It explained that while Reppert initially acted unreasonably in demanding payment of $1800 for the records, much of the delay was attributable to a breakdown in communications between counsel for both parties. The District Court concluded, based on testimony at trial, that a message from one party's lawyer to the other regarding the document requests was never received. Because of this, the attorneys for each party did not resolve the document issue because each independently assumed that the other was supposed to reach out. Because Reppert could not be fully blamed for this, the District Court found that a lesser penalty was appropriate. The District Court assessed the

situation, considered multiple factors, and came up with a penalty that it felt warranted under the circumstances. Given the District Court's thorough analysis, we cannot say that it abused its discretion in assessing a $50 per day penalty for the delay in producing the initial tranche of documents relating to the 401(k) Plan.

As to production of the Nationwide agreement, the total delay was measured at 959 days, from May 17, 2012 to January 1, 2015. Based upon the closeness of the question of whether the Nationwide agreement was even subject to production and the absence of bad faith on Reppert's part, the District Court decided the penalty should be only $1 per day of delay, resulting in a $959 fine. In assessing this fine the District Court explained:

> I concluded that Section 1024(b)(4) does require the production of the Nationwide agreement only after an extensive analysis, and even then, I found it a close question.
>
> Consequently, imposing a substantial document penalty in these circumstances would not serve its purpose in "provid[ing] plan administrators with an incentive to comply with the requirements of ERISA and to punish noncompliance." Punishing Reppert, Inc. for failing to comply with a requirement it was reasonably not aware of would not provide it or any other plan administrator any future incentive to comply with requirements it is not reasonably aware of, and it would be unfair.

(App. at A175-76) (citations omitted). We find no abuse of discretion in this determination. Accordingly, we will affirm the monetary penalties imposed by the District Court.

**C.**

13

Following trial, the District Court found that Reppert Inc. had failed to prove that it was exempt from the audit requirement because the company had more than 120 employees at the beginning of 2008. Reppert does not dispute the legal conclusion that if there were more than 120 participants in the 401(k) Plan at the beginning of 2008, an annual audit by an independent qualified public accountant was required for Plan years 2008 through 2011. *See* 29 U.S.C. § 1023(a)(3)(A). Instead, Reppert contests the factual finding that there were more than 120 participants at the beginning of 2008. Having carefully reviewed the record and the District Court's thorough explanation for its finding that there were more than 120 participants at the beginning of 2008, we cannot find error, let alone clear error.

Consistent with the legislative mandate in 29 U.S.C. § 1023(a)(3)(A), the District Court directed that Reppert "engage an independent qualified public accountant" to audit the 401(k) Plan for plan years 2008 through 2011. (App. at A201.) While Askew challenges the District Court decision to allow Reppert to select the independent auditor, we observe that there is no reason to question the integrity of the auditor and its work at this time. An independent auditor's obligation is not to the company, but to the plan and its participants. If Askew discerns problems or shortcomings with the audit, he is not foreclosed from seeking appropriate relief. Thus, we will affirm the District Court's decision not to appoint directly an independent auditor, but to instead assign that responsibility to Reppert.

**D.**

14

Finally, Reppert brought a state law claim alleging that CalPac breached its contract to provide the company with plan administration and recordkeeping services when it incorrectly determined the number of participants in the 401(k) Plan at the beginning of 2008 and incorrectly recommended that Reppert not conduct an audit of the 401(k) Plan. In its agreement with Reppert, CalPac disclaimed any responsibility for mistakes or omissions arising from information given to it by Reppert. Rather, CalPac only assumed responsibility for the mistakes that arise "solely from the actions of CalPac." (*Id.* at A191-92). The agreement further specified that CalPac accepted no liability for mistakes that cause legal consequences because Reppert was supposed to consult its attorney and independently verify any "legal advice," such as whether an audit would be necessary. (*Id.* at A192-93). Additionally, trial testimony showed that the annual reports of participants in the plans was the product of close collaboration between Reppert *and* CalPac. Thus, it cannot be said the computation of plan participants was the sole responsibility of CalPac. We therefore agree that judgment in favor of CalPac on Reppert's third-party claims was appropriate.

## IV.

For the foregoing reasons, we will affirm the February 5, 2016, February 26, 2016, and September 30, 2016 Orders of the District Court disposing of all claims between the parties.